**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 03 CR 71-3 |
| ) | |
| ALBERT SPAN, ) | Judge Joan H. Lefkow |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Albert Span moves for a reduced sentence pursuant to 18 U.S.C. § 3582 and Amendment 782 to the Sentencing Guidelines. The motion (dkt. 400) is granted. The court resentences Span to a custodial term of 292 months.

**BACKGROUND**

The court assumes familiarity with its prior order on Span's motion, which discussed the relevant factual background. (Dkt. 424.) The threshold question to be decided here is the quantity of crack for which Span should be held responsible, where the evidence at trial showed he planned with co-conspirator Richard Epps to obtain 1 kilogram of cocaine powder and convert it into crack for street-level sale, but the conversion was unsuccessful and no crack was sold. The court's finding on this point is bounded by a special jury verdict finding that Span was responsible for between 500 grams and 1.5 kilograms of crack.[1]

---

[1] The jury in Span's 2004 trial was asked to make certain findings relevant to sentencing beyond a reasonable doubt because the parties and court contemplated that the Supreme Court could hold such findings were required in its decision in *United States* v. *Booker*, 543U.S. 220, 125 S. Ct. 738 (2005), which was then pending. (*See* dkt. 294 at 4.)

1

## ANALYSIS

**I.       Relief Under Section 3582(c)(2)**

18 U.S.C. § 3582(c)(2) permits a court to reduce a sentence that was based on a Guidelines range that subsequently was lowered by a retroactive Guidelines amendment. *See Ebbole* v. *United States*, 8 F.3d 530, 539 (7th Cir. 1993); U.S.S.G. § 1B1.10(a)(2) & (d). Amendment 782 to the Guidelines is retroactive and generally reduced the Guidelines ranges applicable to a variety of drug offenses based on the quantity of drugs involved. *See* U.S.S.G. Amt. 782.

Section 3582(c)(2) was "intended to authorize only a limited adjustment to an otherwise final sentence and not a plenary resentencing proceeding," and proceedings thereunder thus are limited in "scope and purpose." *Dillon* v. *United States*, 560 U.S. 817, 826-27, 130 S. Ct. 2683 (2010). Accordingly, motions under § 3582(c)(2) are to be addressed through a two-step process. *Id.* In the first step, the court must determine whether a new sentence is authorized by § 1B1.10 of the Guidelines, which provides that a new sentence may be imposed only where application of the retroactive amendment would result in a lower Guidelines range, "leav[ing] all other guideline application decisions unaffected." U.S.S.G. § 1B1.10(b)(1); *Dillon*, 560 U.S. at 827; *United States* v. *Hall*, 600 F.3d 872, 876 (7th Cir. 2010). If a new sentence is authorized under those conditions, the court may proceed to determine, in its discretion, whether a lower sentence within the amended Guidelines range is warranted upon consideration of the factors listed in 18 U.S.C. § 3553(a). *Dillon*, 560 U.S. at 827.

A.     **Whether a Reduction in Sentence Is Authorized**

Crack quantity findings in circumstances such as this are governed by the principles articulated in *United States* v. *Stott*, 245 F.3d 890, 911 (7th Cir. 2001), *amended on reh'g in other part,* 15 F. App'x 355 (7th Cir. 2001):

> At times, the Government will be able to provide evidence indicating that all of the powder cocaine in a conspiracy was converted to crack cocaine. When the Government cannot prove that *all* of the cocaine was converted to crack, it must at least provide some evidence of a conversion ratio to support the district court's finding. Furthermore, the district court's determination must be based on reliable evidence, as the Guidelines require, and not on impermissible speculation.

The government carries the burden of proof on a drug quantity finding. *Id.* at 911. The Seventh Circuit also has instructed that courts should "make conservative estimates, especially when presented with generalized testimony, as a way to meet their duties to approximate drug quantities and do so based on trustworthy information." *United States* v. *Henderson*, 58 F.3d 1145, 1152 (7th Cir. 1995).

The government argues that the court should hold Span responsible for 1 kilogram of crack—in other words, find that all of the powder was converted into crack on a 1:1 ratio—based on the following testimony from Epps at trial:

> Q:   And what happens when you cook a kilo, gram [sic] or any amount of powder cocaine? Do you get more or less of the equivalent in crack cocaine?
> A:   You get more.
> Q:   So $23,000, not only was it a good price for soft cocaine, but it was a really good price if we are talking about a kilo of crack cocaine, correct?
> A:   Yes, sir.

(Dkt. 426 at 4; dkt. 228 at 52[2].)

---

[2] All pin citations to documents in the record are to the page numbering imposed by the CM/ECF system as opposed to any other numbering that may appear on the documents.

Span responds that Epps's testimony is insufficient to establish a reliable conversion ratio and that there is no indication that Span shared Epps's beliefs such that Epps's opinion was reasonably foreseeable to Span. (Dkt. 429 at 4.)

As an initial matter, the court agrees with the government that Epps's testimony in this exchange is best understood as meaning that cooking cocaine powder into crack yields a greater mass of the latter substance, although there is some ambiguity as to whether Epps meant it yields a higher street value.[3] The court nevertheless finds that Epps's testimony is insufficient to establish a reliable conversion ratio.

---

[3] The full exchange is as follows:

Q: Now, let me ask you something. Earlier you testified that $23,000, that you were quoted that price from Tommy Gun was a good price because of the sort of lack of cocaine that was floating around the city at that time, correct?
A: Yes, sir.
Q: And this was in the soft form, correct?
A: Yes, sir.
Q: And what were you planning on doing with that?
A: I was planning on selling it to the guys.
Q: As soft, or cooked up?
A: Well, some people don't know how to cook so I would have cooked it for them.
Q: And what happens when you cook a kilo, gram or any amount of powder cocaine? Do you get more or less of the equivalent in crack cocaine?
A: You get more.
Q: So $23,000, not only was it a good price for soft cocaine, but it was a really good price if we are talking about a kilo of crack cocaine, correct?
A: Yes, sir.

(Dkt. 228 at 52.)

It is difficult to interpret this exchange in a way that fully makes sense. Epps's response to the last question is most naturally understood as meaning he could make more money selling 1 kg of crack than he could selling the same amount of cocaine powder. But that is inconsistent with the idea that $23,000 would be a better price for 1 kg of crack than 1 kg of cocaine powder, if one takes his response to the prior question to mean 1 kg of cocaine powder typically could be converted to a greater mass of crack (assuming that the costs of labor, baking soda, and water are negligible).

Notably, even the government does not propose that Epps's statements should be taken literally, and that Span should be held responsible for "more" than 1 kg of crack.

First, as stated above, conversion ratios "must ultimately be based on *reliable* information" and not "unsupported conjecture." *United States* v. *Love*, 706 F.3d 832, 842 (7th Cir. 2013) (emphasis original); *United States v. Hines*, 596 F.3d 396, 397 (7th Cir. 2010) ("If . . . the government wants the sentencing judge to infer the weight of the crack from the weight of the powder from which the crack was manufactured, it has to present evidence, concerning the cooking process, that would enable a conversion ratio to be estimated"). It is not uncommon for conversion ratios—on which can turn many years of a sentencing decision, as here—to be based on expert testimony. *See, e.g.*, *United States v. Eschman*, 227 F.3d 886, 890 (7th Cir. 2000).

Little foundation was laid as to Epps's opinion that cooking powder cocaine into crack yields more of the latter substance. Epps testified that his method of cooking powder cocaine was to add baking soda, heat it in water, and then let it dry. (Dkt. 228 at 59-60; dkt. 258 at 75.) He also testified that he took responsibility for cooking the crack the conspirators obtained because the other members did not know how to do it, suggesting some relative competence. (Dkt. 228 at 52.) He did not testify, however, to his prior experience cooking crack, or more relevantly to cooking crack from the type of cocaine supplied by Tommy Parra. (*See, e.g., id.*; dkt. 258 at 75); *see generally Eschman*, 227 F.3d at 890 (reversing sentencing decision where "the record contains no evidence regarding the sorts of yields [the defendant] could, with his equipment and recipe, obtain in his methamphetamine laboratory (or, for that matter, even evidence regarding yields of similarly-situated defendants)").

More significantly, the Seventh Circuit has explained that converting cocaine powder to crack necessarily results in a weight loss of at least 11% unless impurities are added. *Hines*, 596 F.3d at 397. For that reason, the court in *Hines* reversed the district court's decision to adopt a default 1:1 conversion ratio, calling it a "serious error." *Id.* The government argues that *Hines* is

distinguishable because it addressed a scenario where a district court adopted a 1:1 conversion ratio by pure assumption, whereas Epps's testimony here constitutes evidence that Span could reasonably foresee a 1:1 conversion ratio. (Dkt. 426 at 7 n. 3.) That is true as far as it goes, but it does not address the concern underpinning *Hines*'s holding that conversion ratios should be based on reliable evidence. The government essentially makes no argument that Epps's opinion on a conversion ratio was reliable, nor does the court discern any evidence in the record that would support such an argument.

Second, no evidence was presented indicating Span shared Epps's belief. Epps did not testify, for example, that he told Span he anticipated being able to produce more than a kilogram of crack from the powder he obtained, or about the amount of money he and Span discussed making from the crack sale, in such a way that its weight could be derived from its market value. The court does not believe that evidence directly bearing on an individual defendant's expectations is necessary to establish reasonable foreseeability in every conspiracy case, but it does seem proper to require such evidence where the government seeks to hold a defendant responsible for a drug quantity beyond what is chemically possible to obtain without adding impurities.

Third, there is no indication in the record before the court that the government presented Epps's testimony as a sufficient basis for a conversion ratio at trial or sentencing.[4] *See*

---

[4] This is an unusual situation in which transcripts from two days of sentencing proceedings appear to be missing. The government suggests that perhaps the only things that occurred on those days were the jury receiving and then returning special verdict forms. (Dkt. 426 at 9.) The court is agnostic on that point but believes it is unlikely that even such limited proceedings would not have been transcribed, particularly given that there is a written jury instruction in the record that presumably was read. (Dkt. 199.) The absent transcripts potentially could reflect that the government referenced Epps's trial testimony to the jury in sentencing proceedings, indicating that testimony was the basis for its finding that Span was responsible for between .5 – 1.5 kg of crack.

*Henderson*, 58 F.3d at 1153 (declining to estimate drug amounts based on money obtained from selling them "because, while the government introduced this evidence at trial, it did not present the calculations at sentencing"). To the contrary, in closing arguments at trial, the government referred only to Epps's conversations with LaShon Stuckey in which Epps contemplated selling Stuckey "two and a quarter ounces, which is sixty something grams. . ."[5] (Dkt. 228-3 at 38, 24.) That fact underscores the court's concern with basing a sentencing decision worth several years of incarceration on essentially a single sentence of trial testimony.[6]

In sum, Epps's opinion regarding a conversion ratio is essentially pure *ipse dixit* that is at best in tension with chemical reality. Furthermore, it shines little light on Span's mindset and

---

[5] Epps and Stuckey were recorded discussing this transaction. (Dkt. 228 at 51-53, 55, 63; dkt. 373 at 104, 110, 126.)

[6] The government also suggests that it referenced Epps's testimony in its original sentencing memorandum, stating: "Summarizing the evidence in this case in the Government's Version of the Offense, the government maintained, based on Epps's testimony, that, for purposes of sentencing, defendant should be held accountable for one kilogram of crack cocaine – since that was the amount that Epps reasonably expected (based on his past experience) to derive from the powder cocaine obtained from Parra, in furtherance of the conspiracy." (Dkt 426 at 5.) The government does not support that statement with a citation. The court's review of the Government's Version of the Offense shows that the government discussed only Epps's agreement to sell 2¼ ounces of crack to Stuckey, (dkt. 423-1 at 27), and did not reference Epps's opinion regarding a conversion ratio.

Indeed, the only support the government's memo offered for finding Span responsible for one kilogram of crack is the following sentence: "The [jury's] cocaine and cocaine base finding was based upon the one kilogram of cocaine that Epps received from Parra and later attempted to cook into cocaine base. (Epps and Span talked about this cocaine in G. Ex. 11/22/01, #127, at p. 5.)." (*Id.* at 39.) The exhibit referenced there is a transcript of an intercepted phone call between Epps and Span that shows only that Span was aware of Epps's failed attempt to cook the cocaine powder into crack. (*See* dkt. 373 at 121-25.)

Finally, the government points out that Span's counsel on direct appeal referenced Epps's testimony in an *Anders* brief. (Dkt. 426 at 6-7.) The government does not argue, however, that Span has forfeited his right to challenge the quantity of crack attributable to him here by virtue of the *Anders* brief or otherwise. And the *Anders* brief contains no indication that the government presented Epps's testimony as a sufficient basis for a sentencing finding to either the jury or the court.

7

seemingly was not understood by the government to be a sufficiently reliable basis for sentencing at any prior phase of the proceedings. The court finds it to be insufficient here.

Absent credible evidence to support a drug quantity finding, the court is constrained to fall back on the lower bound of the jury's special sentencing verdict: 500 grams of crack. The parties agree that Span also is responsible for 80 grams of heroin.

Applying the drug tables in Section 2D1.1 of the Guidelines as amended by Amendment 782, these drug quantities result in a base offense level of 30.[7] Applying the enhancements totaling eight levels from his original sentencing, Span's total offense level is 38.[8] The corresponding Guidelines range for a Category III offender is 292-365 months, which permits a sentence below Span's current sentence of 360 months. (Dkt. 367.)

### B. Whether a Reduction in Sentence Is Appropriate

If a defendant is eligible for a new sentence under section 3582, the court may proceed to determine, in its discretion, whether a new sentence is warranted upon consideration of the factors listed in 18 U.S.C. § 3553(a). *Dillon*, 560 U.S. at 827. The court's consideration of the § 3553(a) factors may not "serve to transform the proceedings under § 3582(c)(2) into plenary resentencing proceedings." *Id.*

Span is fifty-six years old and has been in custody since January 2003. (Dkt. 423-1 at 2.) The Probation Office reports that he has been cited for only one disciplinary infraction since that

---

[7] 500 grams of crack (cocaine base) has a converted drug weight of 1785.5 kilograms and 80 grams of heroin has a converted drug weight of 80 kilograms, yielding a total converted drug weight of 1865.5 kilograms. *See* U.S.S.G. § 2D1.1 cmt. 8. This corresponds to an offense level of 30. U.S.S.G. § 2D1.1.

[8] The enhancements remain unchanged in the current version of the Guidelines. *See* U.S.S.G. §§ 2D1.2(a)(1) (add two levels for proximity to public housing); 3B1.1(a) (add four levels for leading five or more people); 3C1.1 (add two levels for obstruction of justice).

time, for phone abuse in December 2006. (Dkt. 427 at 1; *see also* dkt. 423-1 at 13.) He has completed a variety of classes, although he has not obtained a GED. (Dkt. 427 at 2.) He also has not taken substance abuse training, although he reported in his prior presentence interview that he did not use drugs or alcohol. (*Id.*; dkt. 423-1 at 13.)

The evidence concerning his history with violence and guns includes convictions for armed robbery and unlawful possession of a handgun at ages 17 and 23, as well as the very serious witness intimidation count in this case. (Dkt. 423-1 at 12.) He also was arrested for battery or assault several times in his twenties. (*Id.* at 13-15.)

Nevertheless, the court believes that his positive record in prison suggests he poses a small risk of reoffending. Upon consideration of all of the section 3553(a) factors, the court finds a sentence at the low end of his Guidelines range is appropriate.

## CONCLUSION AND ORDER

Span's motion for relief under 18 U.S.C. § 3582 and Amendment 782 to the Sentencing Guidelines is granted. The court resentences Span to a term of 292 months in custody.

Date: May 4, 2020

_____
U.S. District Judge Joan H. Lefkow

9